24-5068 United States v. Campus. May I proceed? We're ready. Thank you. Good morning, Your Honors. I'm Josh Lee from the Colorado Federal Public Defender's Office and I represent the appellant, Dakota Campus. Under United States v. Joe, the physical restraint enhancement doesn't apply where the defendant has already sustained a conviction or received an offense guideline enhancement for conduct that inherently involves restraining the victim. That principle requires reversal of the district court's application of the restraint enhancement in Mr. Campus's case. Mr. Campus was convicted of a strangulation assault and he received an offense guideline enhancement for strangling the victim. And because strangulation inherently involves restraining the victim, the district court erred by applying the physical restraint enhancement to further increase Mr. Campus's... Well, that's not really the issue, is it? The government concedes that that restraint is inherent in strangulation. The government says the enhancement applies because the victim was forced at gunpoint to return to the apartment. So that's the question, isn't it? Yes, it is. And Joe makes clear that that's not the test. Well, you know, you're going to have to help me see how clear it is because I've read it and read it and I don't see it all that clear. Yeah. So the first thing that Joe says is we're not applying the ordinary double counting rule. And that's what the government's asking us to do. They're asking us to decide whether it's based on the same acts. And instead, what they say is we look to whether the offense conduct specifically incorporates restraint. And by offense conduct, what Joe means and what the guidelines mean, both, is the conduct that's described in an offense guideline enhancement. So we ask whether the conduct described in an offense guideline enhancement specifically incorporates restraint. And then the way that it does that is it says, is it practically impossible to commit this conduct that resulted in a conviction or that's described in an offense guideline enhancement without restraint. Where in Joe do you find that you can't rely on different conduct to support the restraint enhancement? So two places. The first is where it says we're not applying the ordinary double counting rule. Well, and it says that the sentence before it talks about the typical double counting and talks about that it's used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes. That would be the normal, right? Right. Then I also think you have to look at what it is that Joe does, right? So Joe, when they are doing their analysis of does application note 2 bar the physical restraint enhancement, they never talk about the defendant's acts in jail. They only analyze the legal provisions in the abstract. So they ask, they say like, okay, what does this use of force enhancement mean? What is aggravated sexual abuse with the use of force? And analyzing those things in the abstract, do those things incorporate restraint? Counsel, how does the grouping aspect of this case impact our analysis of Joe? Because Joe is a single count where the defendants pled guilty. Here you have the defendant being convicted of four counts, three of which group. And so when we look at relevant conduct and the offenses, the conduct that the pre-sentence report relies upon for this adjustment is the holding at point and dragging down the hallway. Well, those are specific offenses of conviction here. So even though they group, they're still not just part of relevant conduct. They're part of offense conduct. So doesn't that distinguish this case from jail? I don't think so. And it could matter in another case that there are multiple counts. But here, the controlling guideline is the assault guideline. And under the assault guideline, he got a strangulation enhancement and strangulation specifically incorporated. Do you have any cases that say that though? Because that principle, I understand that when you have a controlling guideline after you group. But I couldn't find any authority that told me that was the answer. So if you look at application note two, right, it says, does the offense guideline specifically incorporate restraint? Well, what's the offense guideline? It's the offense guideline that applies. To only relying upon app note two to 3A1.3. Yeah, I don't think there's any, right, the on that ground. I want to go back. Well, let me, but there are cases that hold against you, right? Three circuits have ruled otherwise, right? The government has cited two. I'm not aware of a third. I would, I mean, I don't doubt that there might be. The government cited case. I've got six, ninth, and eighth. Okay, the government cited eighth and ninth. I do think that Joe is controlling on this issue, however. Joe doesn't, you know, you're inferring things from Joe, but Joe doesn't talk at all about this issue. I think that if you look at the analysis that Joe conducts, it does resolve this issue because of how it goes about deciding whether something is specifically incorporated into the guidelines. It only looks at the legal provisions in the abstract. There's another important point I want to make about additional conduct. So the question is, can additional acts of restraint support the physical restraint enhancement if they're not used to support an offense guideline enhancement? Well, that issue was present in Joe. The government argued in Joe, well, we can, we can support the use of force enhancement through the beating that the victim received. And that leaves the holding the victim down as separate leftover conduct that's available for the restraint enhancement. Well, the reason that Joe doesn't decide whether the government is right about that is because it applies a rule that makes it irrelevant. If it had been significant to the rule that Joe applied, whether there was additional restraining conduct, it surely would have determined whether the government was right that there was additional restraining conduct in Joe. But they don't discuss that at all. That's because the way that I read Joe is that they adopt a rule that makes that irrelevant, that makes the presence or absence. They don't say that either, right? We don't say that. Well, so I think what it does say that it necessarily entails that conclusion. So they say, okay, here's another example. Two more points I want to make. One is Joe says we're looking at the offense conduct to see whether the offense conduct specifically incorporates restraint, right? Okay, they cite Coldren for that proposition. And Coldren's full quote is, the offense conduct outlined in Chapter 2. So what Joe is saying is, we're looking at the conduct outlined in Chapter 2, not where the defendant did. One more point. The text of Application Note 2 itself specifically resolves this question against the government because the application note says we're looking at restraint as a factor and determining whether that factor is incorporated into the guideline. What it doesn't say, it doesn't say what it would have said. Let me find this. It would have said, do not apply this enhancement if the same conduct resulted in a conviction or in an offense guideline enhancement. So when the guidelines want the issue to turn on the presence of the defendant's conduct, it says that explicitly. I've given four or five examples of that in my brief. So the district court didn't say much about its justification for overruling your client's objection to this adjustment. But I think the fair inference from the ruling is that it just adopts the pre-sentence report. And again, the pre-sentence report, paragraphs six and seven, and then later when it actually applies this adjustment on its sort of do-over calculation, it does talk about this other conduct. But you're telling us your argument is, we ignore the conduct that the district court likely relied upon and we just strictly look at the elements of the offense that's the controlling guideline here. We conclude strangulation includes physical restraint and our analysis is done. Right. So if, and another important point is this is consistent with how the physical restraint guideline itself operates. So the answer to your question is yes. So the physical restraint enhancement, it doesn't matter how many times you restrain someone or how many people you restrain. You still only get one restraint enhancement. And so what application note two does is it extends that principle to other enhancements that necessarily entail restraint. So you only get one enhancement for restraining someone and that principle extends to offense guideline enhancements that necessarily incorporate restraint. Restraint has already been accounted for as an aggravating factor. Well that, I don't know if you're aware of the United States versus Smith from the Sixth Circuit. But there they kidnapped the bank manager and separately kidnapped in a different place the bank manager's family. And they said yeah two separate conduct you can get two enhancements. Two restraint enhancements or like. There was one kidnapping enhancement and one restraint. Yeah I think we're I think we're definitely relying on Joe and the analysis that Joe conducts. Well you're relying on Joe and your interpretation of the analysis it doesn't conduct. Both the analysis it doesn't conduct and the analysis it does right. So it doesn't do what the government says it should do and said it should do in its briefs. And what it does do is examine the legal provisions in the abstract. So it seems to me that what Joe would have had to do if it were applying the government's rule is to say well we only have the restraint that's underlying the offense there's no additional restraint. But instead it says let's look at what the use of force enhancement necessarily entails and let's look at what the elements of the offense necessarily entails. So I I don't think it's you know I I don't see how to read Joe other than as conducting an abstract analysis into what the legal provisions necessarily entail. So it's I think the application note the text of the application note is about the legal provisions in the abstract. It doesn't talk about the defendants the defendant's conduct. The analysis in Joe is about the legal provisions in the abstract. It doesn't talk about the defendant's conduct. So I think both of those things rule out the government's interpretation and How does it not talk about the defendant's conduct? It spends a lot of time discussing whether you can commit aggravated assault without restraint and that is the defendant's conduct, right? That's the offense conduct. So yeah. So the way that I understand it is when they say offense conduct they mean the type of conduct that gets you convicted. This is your collateral. I mean your have explained all of these things more explicitly. Sure, it could have done that, but it does what I'm saying that the court should do. And I'll conserve the remainder of my time unless the court takes questions. Thank you. Thank you. May I proceed? Yes. May it please the court, George Jung for the United States. This court should affirm because under Joe neither the traditional double counting analysis nor anything in the sentencing guidelines and its commentary prohibit applying the restraint adjustment to address the totality of Mr. Kampus's relevant conduct, which in this case includes additional preparatory acts of restraint that are preceded and went beyond the basic strangulation offense. Adopting Mr. Kampus's position would allow him to escape responsibility for these additional aggravating facts. Joe did not impose a categorical bar against applying restraint adjustment in strangulation cases or in any aggravated assault cases. What Joe did was require sentencing courts to not only conduct or look at the, consider the traditional double counting analysis, but also look at the guidelines and its commentary for any other principle, an alternative principle of double counting. And in the guidelines commentary, there are two. The first one is whether the restraint adjustment is specifically incorporated into the offense conduct or in the enhancements in chapter two. The other one is whether it's an element of the offense itself. Joe was decided based on the second of the two, that Joe specifically found that the acts that were before were part of the elements of the offense of conviction. In other words, it was intrinsic to the crime, not extrinsic evidence. It was something the government had to prove beyond a reasonable doubt to happen. And that makes sense because in Joe, you actually had not just Mr. Joe who pled guilty, but also Ms. Joe. Her conduct didn't involve very specifically the act constituting the rape. She was holding down the victim to aid and abet the rape as an accomplice. And so all of that evidence had to be proven by the government. And that is what Joe was getting at. That's why that is part of the element of the offense. The force that was incorporated was an element of the offense. Counsel, do you agree that the offense conduct or the element of strangulation cannot be accomplished without restraining the victim? Yes, your honor. In this case, we would concede that the strangulation, if that was the only thing that was in this case, if the, as perhaps many assault, domestic violence assault cases by strangulation occur, it's an argument that starts in the house and ends in the house. And it ends with a strangulation. If that was the only thing in this case, we would concede that Joe squarely addresses that, even though that's an aggravated sexual abuse case. The reasoning makes sense. It fits. And that couldn't be applied. But in this case, we had additional aggravating acts. The victim ran outside trying to get help. And the defendant ran after her, pointed a gun at her, dragged her back by the hood of her hoodie, and then dragged her into the apartment and locked the door. That all happened before he threw her down onto the ground, got on her, and strangled her. And I think that that's the key difference. Joe was decided based on the facts before Joe. Joe didn't have any other facts, and it didn't purport to create a categorical rule using facts that weren't before. And that doesn't suggest that there was evidence of relevant conduct separate from the aggravated assault. And that because the court didn't look at that, that we can presume it was irrelevant. The court's decision in Joe ruling that all of those acts were part of the aggravated sexual abuse itself implies that everything that was described in the governance brief with the Ms. Joe holding down the victim as well, that wasn't considered a separate act. That was intrinsic to the offense of conviction, aggravated sexual assault, on both of them. And so my understanding of what Joe did was it considered the governance brief, but it disagreed and found that that was part of the offense of conviction, those acts. Counselor, can you help me understand the application of Joe here also in the context of what I asked Mr. Lee, which is this case involves multiple counts of conviction. So count three we'll set to aside because it's its own by statute, the 924C conviction. But the other three grouped under Chapter 3 of the Act. So I'm going to ask Mr. Lee this question, but how do we think about the grouping aspect of three different counts of conviction that clearly two of them account for this other conduct, what you're referring to, that happened prior to the strangulation? And how do we consider whether or not the guidelines already capture that conduct? Or as Mr. Lee says, well, application note two says you look only at the controlling guideline, which here by the So is it that limited? I'm glad you asked that, Judge Federico. I was going to get to it because my understanding and my recollection of the facts was that the strangulation offense, specific offense characteristic enhancement was controlling. The fact that he was also convicted of assault with a dangerous weapon for pointing the firearm at her, it is also an offense of conviction. However, that specific enhancement for using a firearm was not actually part of the calculations. It was partly because the count, the strangulation count had a higher enhancement and that was controlling, but also because the 924C count, that was also, that would have been double counting the pointing, the use of a firearm. And so that plus two enhancement that would have applied potentially if 924C wasn't charged or an offense of conviction in this case, it made it so that that count also, or that enhancement didn't apply. But you started by saying that if we were to follow the defendant's argument that he would be evading responsibility for this conduct, but don't the guidelines already capture that in the same way you just illustrated with the firearm conviction in the 924C? In other words, the guidelines look at the universe of conduct, it figures out here when they group which one is the controlling guideline based upon a higher base offense level, and so it sort of wraps in all this conduct just inherently by the way the guidelines group and work together. So no one's evading responsibility if we were to adopt Mr. Campos's argument, would they? I think that the guidelines, as you point out, should be read as a whole. The adjustment that we're talking about, restraint, appears in Chapter 3. But the very first step that every court has to consider, and I think as you were also alluding to, is step one, which is relevant conduct. Determining what is the universe of conduct that we can apply here. Under this court's prior precedent in Holberg and in Walker, if what it was acts that occurred months or weeks before the offense of conviction could be used to apply a restraint adjustment even though the offense of conviction itself had nothing to do with restraint. In Holberg, that involved the violent possession conviction. There were two counts that originally were charged. The first count involved a domestic violence incident in which the victim reported that there was a gun. The second incident was just an arrest in which the police found a gun on him. That was six weeks later. However, the court had applied the restraint adjustment to that whole offense. And so it understood that all of this is relevant conduct. If it's extrinsic to the offense, it can be applied as well. So your position is even though we group the assault with the gun when he's pointing at her and forcing her back with the felon in possession crime, we can still look at that conduct for purposes of the restraint enhancement? Yes, Your Honor. The relevant conduct includes everything that happened in this case and perhaps additional factors that are specified in 1B1.1, I believe. And I apologize if I was confusing or being confusing about the effect of the grouping analysis. There was no additional multiple count enhancement for the additional counts. And so oftentimes when you have multiple counts that involve perhaps different victims or completely different incidents, there would be an enhancement for multiple counts. In this case, that wasn't an issue and that wasn't part of the pre-sentence investigation report. And it did not factor into enhancing Mr. Campos' offense level. The only enhancements that applied were the base offense level for aggravated assault and then the Section 2A2.2B4 for strangulation. And that strangulation enhancement only talks about the act of strangulation and the victim's relationship with the defendant as an intimate partner. It's not specifically incorporated any other conduct such as dragging the victim back into her apartment, locking the door. Again, we would argue that taking Mr. Joe's position, he could have kidnapped her from work and held her in place for three days before the strangulation. But because the strangulation itself involves a restraint that none of that other excess behavior, which is aggravating, should be counted for the purposes of the restraint adjustment. And I just don't think that this Court's prior precedent in Holbert and Walker require that. I think that it's also inconsistent with some of the other circuits that I've cited and Your Honor has noticed. In Joe, I mean, what the defendant is focusing on is that Joe says we are departing from the typical double counting rule and we're doing something different. How is what you're proposing for us in interpreting the application of this enhancement, how does that depart from the typical double counting rules? My understanding of Joe is that it didn't say don't do the double counting analysis. But it also said in addition to that, look at anything else in the sentencing guidelines that provide for an alternative principle that essentially goes at the double counting idea. And in this case, there were the two additional factors that either of which, if they were found, would preclude applying the restraint adjustment. What I'm arguing here is that none of those three essentially factors, either the traditional double counting analysis or the specific incorporation analysis or the elements analysis, apply here to bar application of the restraint adjustment under the facts of this case. And so it would not, it wouldn't require, it doesn't depart from Joe and it doesn't depart from this court's understanding of relevant conduct in its prior decisions. Thank you. And if there's nothing else, I yield my time. Thank you. Your Honor, the government's position does not make sense of the language of the application note and it is not a faithful account of Joe. First, the government says that the acts in Joe were an element and that's why the application note applied. But acts are not elements. What the application note says is where the unlawful restraint of the victim is an element. So it wasn't the defendant's acts in Joe that were an element. It was the use of force that was an element. The government says that Mr. Campos's additional acts of dragging the victim back into the apartment and pointing a gun at her were not specifically incorporated. But application note 2 doesn't tell you to ask whether the defendant's acts were specifically incorporated. It asked whether the offense guideline specifically incorporates this factor. So the offense guideline sets out these types of conduct like strangulation. So the offense guideline specifically incorporates restraint. So the government's position does not make sense of the text of the guideline. The government's position is also not an accurate account of Joe. The government says that Joe was decided on the facts of that case. It said it in its brief. It said it again up here. But if you look at the analysis in Joe, pages 1070 to 1072, there is no discussion whatsoever of the facts of Joe. It is only about whether these legal provisions incorporate restraint. And another thing is, you know, I think Judge McHugh rightly pointed out that I am interpreting Joe. The government is also interpreting Joe and it ends up saying things like, well what Joe did is it implicitly rejected the government's argument about there being leftover conduct by implicitly deciding that all of those acts were intrinsic. I just don't think when there's a prominent argument in the government's brief that it makes sense that Joe would not have discussed it explicitly if it were dispositive. Thank you. Thank you. We will take this matter under advisement.